I'm Robert Jobe and I'm appearing today on behalf of the petitioners Herminio and Araceli Nevarez. On the data point, the question of data, I want to make just three points. First, I think the government's reliance on Harper is misplaced because in data, as I understand it, although the court announced a rule that there's no tolling, it didn't enforce it with respect to that particular petitioner, the petitioner before the court, the Supreme Court in that case. What it did is it announced the rule but then said that they don't need to apply the rule because the Board of Immigration Appeals had declined or neglected to rule on his request to withdraw from the voluntary departure agreement. So as a result, they didn't enforce the voluntary departure ruling in that case. As a result, I don't think that this court and other courts have to apply the data rule retroactively. This case, it reminds me of Shalala v. Schaefer. In Shalala v. Schaefer, the Supreme Court altered the rules with respect to filing eejit motions. It shortened the time that people thought they had to file an eejit motion. But in that case, it said they announced the rule but they didn't apply it to the petitioner because they recognized that the district court in that case had not entered a final judgment. Similar situation here. They announced the rule but they didn't apply it to Dada himself because they found a way out of that. They said that he had the right to automatically or unilaterally withdraw from the voluntary departure agreement. And because the new rule about tolling that was announced in Dada was not applied to the petitioner in Dada, this court is not required under Harper to apply the ruling in Dada retroactively. And obviously, for purposes of fundamental fairness, it shouldn't and can't. The second thing, the second point that I want to make with respect to Dada is that you need to look at the context of Harper. You know, one year after Harper, this court said en banc in George v. Camacho, no court has ever applied a change to a procedural rule in a manner that serves to forfeit a litigant's substantive rights when that litigant had fully complied with the provisions of the rule as it existed at the time he acted. No court ever has. Dada doesn't change that. And none of the cases that the government's relying on in this case undermine that basic fact or principle. No court has ever done that. And if you were to do that here, it would be the first time. That's what distinguishes this case from Harper and the other cases that the government's relying on. If you were to retroactively apply Dada in a case like this, it would punish somebody who abided entirely by the rules that were in effect at that time and should forfeit a litigant's rights. Different era. Pardon me? I said that was a different era when George v. Camacho was decided. You know, it was only, was it last year that the Supreme Court decided that when a judge misled an individual about how long a time he had and they relied on the court's representation, they still lost because they made the mistake of relying on a federal judge? I think that to apply a rule like that in this context, it raises due process concerns, clear due process concerns. And for that reason, I think you need to avoid. I think that gives you a basis to distinguish Harper. Well, I'm suggesting is that the law no longer seems to be that when you change a procedural rule retroactively, you can't do it to someone who's relied on the law, the court or anything. Well, if that were the case, Your Honor, then obviously the third point is that. Well, I'm not saying it is. I just thought you might want to consider. I have considered it. I don't think there's any case that undermines that language in George. Because I think that that's my second point. My third point is that obviously if you're going to apply data retroactively, the rule announced in data is that an individual has to have an opportunity to unilaterally withdraw the application. And at the time that the Nevarices were before the Board of Immigration Appeals, there was no such rule. Nothing in the regulations or case law suggested that they had that unilateral right. So the real issue is how do you retroactively give them that right? You know, Mr. Miller is proposing that one suggestion, which is a reasonable one, that the filing of the motion should be construed as automatically withdrawing the individual from the voluntary departure agreement. I think that's a completely reasonable solution. But something, there has to be a manner in which these petitioners can, note pro tonque, withdraw from the voluntary departure agreement. That goes to something that wasn't clear from your brief, and that is what are you actually asking us for? In other words, your case is a little different because you have a numerical bar issue. Right. And so are you asking that your client be, in effect, permitted to withdraw from voluntary departure and have all of this adjudicated? Our threshold position is, Your Honor, that data cannot be applied retroactively because it's different from Harper, because as I said before, the rule announced in data was not applied to data. If you don't prevail on that. Then I think you can rule on the numerical limit question. If we prevail on that, if we lose on that, it's a moot point. Well, that was my question. If you lose on the numerical limit question, it's a moot point. Yeah. If we prevail on that question. Numerical limit? If the motion was barred, the motion that we filed was barred because it was numerically barred, then there's no way that that could have told the voluntary departure period anyway. And I think that the whole data question becomes a moot point. And that's just to be clear, that's the second motion to reopen. Yes. Right. Adding more information. Right. And being timely. I think the important thing is. Let me ask you this question. Yes. Are you saying that voluntary departure is irrelevant if you lose on the motion? That the effect of voluntary, of violating voluntary departure. No. But that the filing of the second motion to reopen, if it was numerically barred, I don't think that would have told the voluntary departure. I guess if the filing of the motion automatically withdrew from the voluntary departure, the initial motion, arguably it's not moot. But I think we can answer the voluntary departure question. And if we prevail on the voluntary departure, or on the numerical limit question, and if we prevail on that, then you have to address the data question. But if you're, but if that, if we take it like a regular case and we didn't have data for a minute. Right. We just took it and we looked at the numerical bar and we saw whether the BIA was within its bounds to make its determination. And if we upheld the BIA on that. Right. Then it would be a denial of the petition, correct? Yes. We lose. I have to think about, we lose on the merits of our petition, but I have to think about whether remand is still appropriate, because they would be losing their right of voluntary departure. I need to just ponder that, and I want to get back to you on that question. I do want to just come back to this issue about the numerical limit, because I feel like our position on that is very strong. And I've only had two minutes to articulate this. I mean, the statute says that it grants an alien a right to file one motion to reopen. In this case, the board ruled that the petitioners exhausted that right to file one motion to reopen when they submitted an untimely request for reopening. It's our view that because the board ultimately ruled that the motion was untimely and thus improperly filed, that it can't exhaust the alien's right to file one motion to reopen. If it's untimely and dismissed as improperly filed, it wasn't filed for purposes of the statute, and it can't be counted as the alien's one motion to reopen. Our secondary position --" So in other words, you get one motion, but if you're late on it, then it doesn't count that you filed a late one? Is that it? Yes. I mean, the purpose --" Maybe I'm, like, missing something. Help me out on that. You have a right to file one motion to reopen, and this Court has construed that as granting you a right to a determination on the merits. If it's submitted and it's late, it's procedurally defective. It should have been rejected by the board. In other words, if --" How does that work as a practical matter? You filed two years later, and they say, I'm sorry, that's untimely. And you say, okay, but I still haven't filed yet because I didn't get to file. No, because it's untimely. Well, but this was untimely. No, our second motion was completely timely. Well, your second motion is timeliness. It was based on whether there's more information. But I'm talking about the first motion. But there's no question that the second motion was timely. The only issue is whether it's numerically barred. And they're claiming that it was numerically barred because the client's former attorney made a submission that really doesn't qualify as a motion to reopen, and it doesn't qualify as a filing. It doesn't qualify as a filing because it was submitted well out two months after the 90-day statutory period had lapsed. So it wasn't properly filed. When you say the second motion was timely filed, what do you mean by that? What is the baseline for timeliness in that? The board agrees with this because we prevailed in the court of appeals. There was a remand back to the board. The board issued a new administratively final order, and they filed within 90 days of that order. There's no dispute that that's final. This is the only sort of circumstance where this is going to arise, I think, is when somebody prevails in the court of appeals and the case goes back. So the only issue is, is it numerically barred? And our view is that it's not numerically barred because the first one wasn't filed because it was never properly filed, it was two months late. Our second position is that the first submission by the attorney, although captioned as a motion to reopen, it wasn't, as a legal matter, a motion to reopen. It can't be a motion to reopen because it was filed two months after the statutory period had lapsed. There was no claim to equitable tolling made there. What it, as a legal matter, consisted of. Based on the same child's disabilities. That's what they were asking the board to say. That's irrelevant. The child has some difficulties. That's irrelevant because requests for sui sponte reopening are almost always going to be based on new evidence. Right. That's sort of irrelevant. As a legal matter, though, the submission that was made by former counsel, it can't be characterized as a motion to reopen because it's outside the time limit. All it could, as a legal matter, be characterized as is a request for sui sponte reopening. And a request for sui sponte reopening can't, it's not a statutory motion to reopen, and it can't exhaust the alien's right to file one such motion. All right. We'll give you a little time for rebuttal and then think about the question of whether the voluntary departure issue by itself has collateral consequences. Right. Thank you. Okay. Thank you again, Your Honors. John Cunningham for the Attorney General. I think I'll be very brief. The court's discussions with my colleague, Mr. Job, have already highlighted the government's basic position in this case, which is, first, you don't have to get into the data thicket in this case because independently, the board was correct in denying the second motion to reopen as numerically barred. That is enough to deny the petition for review in this case. If you reach that conclusion, that the board acted within its discretion in concluding that the second motion to reopen was numerically barred, then the filing of the second motion should be construed as not sufficient, if you even reach that point, to toll the voluntary departure period because it was an improper filing. It was Mr. Job, I think, started to concede that and then backtracked a bit. But I think that's right. I think if the second motion was numerically barred, then it should not be construed as a filing sufficient to toll or suspend voluntary departure, if you get to that point. And third ‑‑ Can you go back to why his point was the first motion to reopen based on the young child's disabilities, they argued both sui sponte and for tolling, that that wasn't a motion to reopen in effect. Of course it was. I mean, it was a motion to reopen based on new evidence having to do with the daughter's physical problems. The notion that that doesn't count for purposes of the numerical limit on motions to reopen, if a motion to reopen is filed late and is filed with the board, filed with the board, it goes into the board's door and is received by the board, but then is denied as untimely, that somehow is a nonevent for purposes of calculating the numerical and time limits in the statute, is to me ludicrous. It would render ‑‑ Did the board have jurisdiction to deal with that motion? The first motion, Your Honor? Yeah. It had jurisdiction to decide that it was untimely, to consider that it was untimely. It did that. But when it decided it was untimely, it then had no jurisdiction to decide the motion. It had no jurisdiction to decide the merits. That's correct. But the argument of the petitioners is that they have a statutory limit ‑‑ I'm sorry, a right to have one motion to reopen decided on its merits. That doesn't appear in the statute. It's based on sentences clipped out of the court's decisions in Azarte and Barroso. But I think in context, the guiding posts for the court here are the statutory ‑‑ it's the statutory language that says that an alien may file one motion to reopen, there are some exceptions that don't apply here, and must file that motion within 90 days. Again, there are exceptions, but they don't apply here. Does the board have authority, even if it was untimely, to sua sponte, take a look at it? Of course. Yes. Yes. That is a separate authority. The board can do that. It can reopen. But you have to have a motion filed before you could sua sponte. No. Actually, you don't have to. But it's more likely that they don't pull it out of ‑‑ More likely. Yes. More likely. And I think, yes, that's true. The board doesn't usually act on its own unless something very unusual happens. If you file ‑‑ if I was filing a motion to reopen that I knew was late, I would say, I'm acknowledging this is late, please exercise your sua sponte authority. But I would never ‑‑ it would never occur to me, I don't think, to then argue somewhere down the road that that filing and that pleading that I made didn't count. It never actually happened. And that's what the petitioners are arguing here. So they did argue for sua sponte consideration in tolling at that time, did they not? The ‑‑ On motion number one. The pleading was styled such, Your Honor, but they didn't really ask for it. And as we say ‑‑ as we explain in our brief, in the actual ‑‑ in the subsequent appellate litigation before this Court, they argued for equitable tolling of the statutory time limit, not for sua sponte reopening, although the board had abused its discretion. We've already ruled ‑‑ that came up to us on appeal. That's correct. And we said the board's order was upheld. Upheld. At least as to that, but not as to the timing of the 30‑day voluntary departure. That's correct, yes. It's sort of ‑‑ the petitioners here were sort of saved by the intervening event of this Court's decision in Padilla, Padilla. That's the only reason it went back. And interestingly, when the board issued its second order in October 23rd, 2007, it vacated its earlier order only with respect to the grant of voluntary departure. Otherwise, the 2004 order remained in place. So although the board didn't address it here, I think there was a real open question as to whether the second motion to reopen was timely. If you consider the operative order, the substantive order by the board to be the 2004 order, then a motion to reopen filed in 2007 is clearly untimely as well as numerically barred. So my point here, my bottom line point is if you uphold the board on the numerically barred issue, you don't have to decide data. Why is that? Doesn't the voluntary departure decision of the board have independent collateral effects on the petition? I'm sorry, Ron. I don't quite follow you. The board denied ‑‑ the board's order here did not address data or voluntary departure at all. It said numerically barred. There's nothing about voluntary departure in the order? I thought there was. I thought it said that it shouldn't be stayed. Oh, yes. That's right, Your Honor. Excuse me. The petitioners did ask that a new stay of voluntary departure be granted, and the board declined to do that. Petitioners have not pursued that in this proceeding. The board probably couldn't have given them any more voluntary departure time anyway because it had already given them the 60 days statutory maximum. But the question is whether filing a motion to reopen would serve to withdraw the request for voluntary departure. To do that, you have to say that even if the second motion is numerically barred and therefore improper under the statute, it nevertheless serves a substantive benefit for the petition. Well, it's not a substantive benefit. It's a decision that I'll pursue this motion instead of pursuing voluntary departure. Well, I'm trying to force a not conscious aim of the petitioners. It was not the conscious ‑‑ Oh, no, but it's either the rule or it isn't. Yes, that's right. And so that if the board were to adopt that rule, it would benefit the petitioner in at least the respect that he wouldn't have violated the voluntary departure. Well, that would put an overlay onto the regulations on the Supreme Court's decision in Dada that I strongly urge the court not to do because the whole basis of the regulations assumed that the motion for reconsideration or motion for reopen was timely made, was a proper motion, and we will now construe it, says the Attorney General, and to some extent the Supreme Court, as having also been a unilateral withdrawal of the previous request for voluntary departure. But if the pleading is improper, if the pleading is bogus, it should not be allowed to serve that second purpose. So could I ask you that, though? Let's say we were to determine it was numerically barred. Yes, ma'am. But what if it were timely? And I don't know if it is or not because nobody really argued that, although I know counsel said it is. Is that something that should be remanded to the BIA to determine if it were timely, then it would fall, you'd kind of put the person in the same situation Mr. Dada was in? Yes. My answer to your question is yes. That issue should go back to the board because that would be a whole new issue. The board never considered whether this second motion was untimely. I've suggested that it probably was not, but that's just me speaking. If you want the board to. It's not. He says it is, but. Yes. But would you agree that because under Dada, there is really no talk about whether it's a numerically barred motion. That's correct. We're kind of in never-never land. So if we agreed with you on that, it would still need to go back to the board because if it were timely, then these, Navarro's would be able to take advantage of the kind of the either-or, you know, withdrawal of the voluntary departure. Motion would have already been decided maybe on the numerical bar, but then wouldn't have the downside negatives of having failed to depart. Would that be the right procedure? Certainly the right procedure should be to remand for the board for that question, Your Honor. I don't know how the board would come out on that. And if the board should agree that with Your Honor's hypothetical, then, yes, the Dada saving grace and the saving grace allowed by the regulations would be available. Perhaps if the board then made the additional decision, as we've discussed in the earlier case, that the Dada remedy could be retroactively applied to a petitioner in this situation. That's correct. All right. Thank you, counsel. Thank you, Your Honor. I thank the Court for its attention. Going back to Judge Reinhardt's question. Yeah. In thinking about it, clearly there are collateral consequences. For example, anybody who fails to comply with the terms of their voluntary departure is subject to a civil penalty of not less than $1,000 and not more than $5,000. So just based on that, there are civil penalties that would attach if they were deemed to have violated the voluntary departure. So I don't think that's a moot question. On this issue about whether a request for sua sponte reopening that's filed somehow exhausts the alien's statutory right to file one motion to reopen, I really strongly disagree on this because the standards for the two things are completely different. You know, a statutory motion to reopen, you have to show prima facie eligibility for relief. A request for sua sponte reopening, you have to show exceptional circumstances, truly exceptional circumstances that warrant reopening. Totally different standards. And the fact that the lawyer in this case captioned it as a motion to reopen, that's only because the board tells us that's what we're supposed to do when we ask, when we file a request for sua sponte reopening. If you look at matter of XGW, the board says we're going to reopen population planning cases on our own motion. But for us to do that, you need to file a motion. It's going to be untimely, it's going to be otherwise numerically barred, but we're going to use that as the vehicle to reopen on our own motion. And when you do that, you have to comply with all the other regulatory requirements that normally apply to a motion to reopen. You have to pay the fee, you have to submit whatever new evidence. They tell us to do that. But that doesn't make it a statutory motion to reopen. It's something that's completely different. And for us to do as they ask and then be penalized and told, well, you've exhausted your one right to file a statutory motion to reopen, which has a lower burden of proof, that's just not fair, and it doesn't comport with the statute. So you said that this was the first motion to reopen was a motion to request the board to reopen sui sponsi? That's all the board could do, Your Honor, because if you look at that motion, it invokes the regulatory provision about sui sponsi reopening. But because it's filed outside the 90-day period and it makes absolutely no claim that it's timely, there's no equitable tolling argument. All the board could have done with that motion as a legal matter is use it as a vehicle to sui sponsi reopen. Is there anything in the motion that suggests or states that this is a request for sui sponsi reopening? Yes, he cites Section 8 CFR 1003.3A and quotes the language that says that the board may reopen at any time. He doesn't make any tolling argument at all. As a legal matter, that was nothing more, no matter what you call it, no matter what the lawyer captioned it as, as a legal matter, it's nothing more than a request for sui sponsi reopening, because that's all the board could do with it. It didn't have jurisdiction to grant it as a statutory motion to reopen, and it can't count, therefore, to exhaust this guy's one opportunity to file such a motion. Thank you, Your Honor. The case just argued will be submitted. The next case on the calendar is United States v. Brandau and Carr.
judges: Reinhardt, Noonan, McKeown